UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VISUAL IMPACT FILMS CORP.<br>(d/b/a TRANSPACK),<br><br>     Plaintiff,<br><br>    v.<br><br>ATHALON SPORTGEAR, INC.<br><br>     Defendants. | Civil Action No.: 7:16-cv-355<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiff Visual Impact Films Corp. (d/b/a Transpack) for its First Amended Complaint against Defendant Athalon Sportgear, Inc., pursuant to the Court's Order of February 25, 2016 (DE 10) and Fed. R. Civ. P. 7 and 8, alleges as follows:

1. This is an action for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1125, and unfair competition and deceptive trade practices under New York State law.

### THE PARTIES

2. Plaintiff Visual Impact Films Corp. ("Transpack") is a New York corporation with its principal place of business at 250 East Hartsdale Avenue, Suite 38, Hartsdale, New York 10530.

3. Defendant Athalon Sportgear, Inc. ("Athalon") is a New York corporation with its principal place of business at 10 West 33rd Street, Suite 1012, New York, New York 10001.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over the Transpack's claims pursuant to 28 U.S.C. §§ 1331, 1338 and 1367.

5. This Court has personal jurisdiction over Defendant Athalon as a New York Corporation which has purposefully availed itself of the benefits of incorporation in the State of New York.

6. In addition, this Court may exercise personal jurisdiction over Defendant Athalon because, upon information and belief, Athalon regularly transacts business within the State of New York and/or derives significant revenues from the sale of goods or services within the State of New York.

7. Venue in the Southern District of New York is proper under 28 U.S.C. § 1391 because, upon information and belief, Plaintiff Transpack and Defendant Athalon are jurisdictionally present within this Judicial District.

## FACTS COMMON TO ALL CAUSES OF ACTION

### Transpack's Trade Dress

8. Transpack was founded in 1994 and within a few years Transpack's backpacks were being sold in stores nationwide including The Sports Authority and other retail large chains.

9. From its inception, Transpack's backpacks featured trapezoidal panels of identical shape and size on both sides of the bag, and the panels have a greater height in the back of the bag as compared to the front, so that the top edges of the panels slope downward from the back

2

of the bag towards the front, and have also featured contrast stripes on both sides of the bag that run along the top edge of the trapezoidal panels so that the stripes slope downward from the back of the bag to the front of the bag

10. One of Transpack's first customers was the Museum of Modern Art Design store, known for its selection of products with unique and distinctive designs.

11. For at least the last fifteen years, Transpack's bags have featured a unique and distinctive trade dress design (the "Transpack Trade Dress") that includes:

   a. A semi-circular shaped lid at the top of the bag;
   b. A distinctive v-shaped panel at the front of the bag;
   c. A rectangular piece of webbing, having a height greater than its width, attached to the aforementioned v-shaped panel;
   d. Trapezoidal panels of identical shape and size on both sides of the bag, and the panels have a greater height in the back of the bag as compared to the front, so that the top edges of the panels slope downward from the back of the bag towards the front; and,
   e. Contrast stripes on both sides of the bag that run along the top edge of the trapezoidal panels so that the stripes slope downward from the back of the bag to the front of the bag.

12. Photos of one of Transpack's backpacks featuring the Transpack Trade Dress is shown below, with labels corresponding to the description in Paragraph 11 above:





13.     The elements of the Transpack Trade Dress create an overall look and total image that is protected under § 43(a) of Lanham Act, 15 U.S.C. § 1125(a).

14.     Transpack's use and commercialization of the Transpack Trade Dress has been exclusive for at least the last fifteen years.

15.     The Transpack Trade Dress has become synonymous with Transpack's backpacks and is recognized by consumers as indicating Transpack as the source of the bag.

16.     The Transpack Trade Dress creates a distinctive image that serves to identify the products in the minds of consumers as emanating from Transpack.

17.     The Transpack Trade Dress is distinctive and is recognized by consumers as identifying the source of Transpack's backpacks.  Transpack has expended significant resources to promote this connection in the minds of consumers as part of an overall strategy to establish Transpack's standing in the market.  As a result of these efforts, Transpack has enjoyed remarkable success in the United States.

18.     The elements of the Transpack Trade Dress are, both individually and collectively, merely ornamental and do not serve any functional purpose.

4

19. Backpacks featuring Transpack's Trade Dress have been extensively editorialized and advertised in sports publications such as POWDER and SKI Magazines for at least fifteen years.

20. For over fifteen years, Transpack has advertised and promoted its Transpack Trade Dress by sponsoring athletes and sporting events.

21. Transpack has sold special edition backpacks bearing the Transpack Trade Dress that feature the name and likeness of renowned freestyle skier Glen Plake, as shown below.



22. Glen Plake has appeared at Transpack's booth at the *SnowSports Industries America Snow Show* to promote Transpack backpacks which bear his name and likeness. These backpacks also bear the Transpack Trade Dress.

23. Transpack is the official bag of the Professional Ski Instructors of America ("PSIA") and backpacks featuring the Transpack Trade Dress are featured in PSIA's catalogs.

24. For over fifteen years, Transpack has purchased booths at several industry trade shows per year, where it promotes and sells backpacks featuring the Transpack Trade Dress.

25. For over fifteen years, Transpack has promoted the Transpack Trade Dress at national and regional trade shows, including but not limited to the *SnowSports Industries America Snow Show* and the *Winter Sports Market*.

26. Transpack advertises its backpacks featuring the Transpack Trade Dress in printed catalogs.

27. Transpack commits a large budget within its industry for magazine ads featuring backpacks with Transpack's Trade Dress.

28. Transpack has spent substantial sums of money advertising its products featuring the Transpack Trade Dress to the ski and skate industry and the consuming public in magazines and participating in trade shows.

29. Transpack's backpacks bearing the Transpack Trade Dress are among the best-selling backpacks in the relevant market.

30. Transpack has sold millions of dollars worth of backpacks bearing the Transpack Trade Dress in the United States.

31. Transpack has achieved remarkable commercial success in the United States with its sales of backpacks featuring the Transpack Trade Dress.

32. By virtue of Transpack's extensive use of the Transpack Trade Dress on and in connection with the advertisement, promotion and sale of ski and skate backpacks, the Transpack Trade Dress has acquired a secondary meaning among consumers of ski and skate goods and products in the United States.

33. The Transpack Trade Dress serves to identify Transpack as the source of backpacks bearing the Transpack Trade Dress and to distinguish Transpack's backpacks from those of their competitors.

34. Transpack's Trade Dress is not essential to the use, purpose, cost or quality of the backpack.

35. Transpack's exclusive use of Transpack's Trade Dress would not put competitors at a significant non-reputation related disadvantage.

### Athalon's Infringment of Transpack's Trade Dress

36. The Defendant Athalon has advertised, promoted, sold and offered for sale a line of backpacks under the model name "Tri-Athalon" which include all of the elements of the Tranpack Trade Dress.

37. The picture below shows Defendant's Tri-Athalon backpacks (left column) and Transpack's backpacks (right column) which incorporate Transpack's Trade Dress.



38. Athalon's Tri-Athalon backpack incorporates all of the elements of Transpack's Trade Dress.

39. The Tri-Athalon backpack features:

   a. A semi-circular shaped lid at the top of the bag;
   b. A distinctive v-shaped panel at the front of the bag;
   c. A rectangular piece of webbing, having a height greater than its width, attached to the aforementioned v-shaped panel;
   d. Trapezoidal panels of identical shape and size on both sides of the bag, and the panels have a greater height in the back of the bag as compared to the front, so that the top edges of the panels slope downward from the back of the bag towards the front; and,
   e. Contrast stripes on both sides of the bag that run along the top edge of the trapezoidal panels so that the stripes slope downward from the back of the bag to the front of the bag.

40. Upon information and belief, Athalon deliberately copied the Transpack Trade Dress for the express purpose of causing confusion, misleading and deceiving the trade and consuming public to believe erroneously that the Tri-Athalon backpack originates with or is somehow sponsored by Transpack.

41. Athalon's implementation of identical color combinations to those of Transpack's backpacks, as shown in the picture above, is further evidence of Athalon's deliberate copying for the purpose of causing consumer confusion.

42. Athalon's unauthorized use of the Transpack Trade Dress in connection with backpacks that do not originate from Transpack is likely to cause confusion, mistake and deception among the purchasing public as to the origin of Athalon's products, and is likely to deceive the public into believing that Athalon's products originate from, are associated with, or are sponsored/authorized by Transpack when they are not.

43. Athalon's Tri-Athalon backpack is sold in direct competition with Transpack's backpacks which incorporate the Transpack Trade Dress. Upon information and belief, the parties' products often are sold side-by-side within a given retail store location.

44. Upon information and belief, the material used by Athalon in its Tri-Athalon backpack to divide the interior pockets are of inferior quality to the material used by Transpack to divide the interior pockets of its backpacks bearing the Transpack Trade Dress.

45. On January 20, 2015, Transpack sent Athalon a letter informing Athalon that their Tri-Athalon backpack infringed upon Transpack's trade dress and demanding that Athalon cease and desist from selling the Tri-Athalon backpack.

46. On February 13, 2015, Athalon responded to Transpack's January 20, 2015 letter, stating in relevant part that Athalon refused to comply with Transpack's demands.

47. On November 19, 2015, Transpack sent another letter to Athalon reiterating its position that Athalon's Tri-Athalon backpacks infringe Transpack's trade dress and again demanding that Athalon cease marketing, advertising, selling or offering for sale backpacks which incorporate any or all components of Transpack's trade dress.

48. On December 11, 2015, Athalon again refused to comply with Transpack's demands.

49. Upon information and belief, Defendant Athalon owns and/or controls the website at www.athalonsportgear.com (the "Athalon Website").

50. The Athalon Website stated that Athalon's Tri-Athalon backpack has a "new revolutionary patent design."

51. Upon information and belief, Athalon is not the owner of any United States patent or patent application which discloses or claims the Tri-Athalon backpack design.

## CLAIM I
## Infringement of Transpack's Trade Dress (15 U.S.C. § 1125(a))

52. Plaintiff repeats and realleges the allegations set forth in Paragraph 1-51 above.

53. Athalon's use of the Transpack Trade Dress in connection with backpacks that do not originate from Transpack is likely to cause confusion, mistake and deception among the purchasing public as to the origin of Athalon's products, and is likely to deceive the public into believing that Athalon's products originate from, are associated with, or are sponsored/authorized by the Transpack when they are not.

54. Upon information and belief, Athalon's actions demonstrate an intentional and willful intent to trade on the goodwill associated with the Transpack Trade Dress.

55. By reason of the foregoing, Athalon has willfully infringed Transpack's Trade Dress in violation of 15 U.S.C. § 1125(a).

## CLAIM II
## Unfair Competition under New York Law

56. Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1 – 55.

57. Athalon's above-described activities, which were engaged in knowingly and willfully, constitute unfair competition under the common law of the State of New York.

58. Plaintiff has no adequate remedy at law.

## CLAIM III
## New York General Business Law § 349

59. Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1 – 58.

60. Athalon's above-described activities constitute deceptive acts or practices in the conduct of business, trade, or commerce in the State of New York, in violation of Section 349 of the New York General Business Law.

61. Athalon has acted knowingly and willfully in engaging in the foregoing deceptive acts or practices.

62. Plaintiff Transpack has been injured by Athalon's deceptive acts or practices.

63. Plaintiff has no adequate remedy at law.

## JURY DEMAND

64. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Transpack demands trial by jury as to all issues properly so tried.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Transpack prays that this Court grant the following relief:

A. A permanent injunction directing Athalon to discontinue all use of the Transpack Trade Dress and all confusingly similar variants thereof;

B. Damages and/or profits in an amount to be determined at trial;

C. A finding that this is an "exceptional" case under 15 U.S.C. § 1117(a), and, on that basis, award Plaintiff Transpack attorney's fees and costs and expenses of litigation, pursuant to 15 U.S.C. § 1117(a) and (b); and \

D. Such other and further relief as the Court may deem necessary, just and proper.

Dated: Ossining, New York  
      March 28, 2016

Respectfully submitted,

**COLLEN IP**  
The Holyoke-Manhattan Building  
Ossining, New York 10562  
(914) 941-5668  
(914) 941-6091 (fax)

*Attorneys for Plaintiff*

By: _____  
    Kristen A. Mogavero – kmogavero@collenip.com  
    Joshua Paul – jpaul@collenip.com

## CERTIFICATE OF FILING AND SERVICE

I, Kristen A. Mogavero, hereby certify that on March 28, 2016, I caused the foregoing FIRST AMENDED COMPLAINT to be filed with the Court via ECF which will send notification to all counsel of record.

                                                                      ___s/ Kristen A. Mogavero_____